UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LLOYD SHAFFER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | ) Case No.: 1:14-cv-00794 - JLT<br>)<br>) ORDER DIRECTING ENTRY OF JUDGMENT IN<br>) FAVOR OF DEFENDANT, CAROLYN W. COLVIN,<br>) ACTING COMMISSIONER OF SOCIAL SECURITY,<br>) AND AGAINST PLAINTIFF, ROBERT LLOYD<br>) SHAFFER<br>)<br>)<br>) |

　　　　Plaintiff Robert Lloyd Shaffer asserts he is entitled to supplemental security income under Title XVI of the Social Security Act.  Plaintiff argues the administrative law judge erred in evaluating the medical evidence and the credibility of his subjective complaints.  Because the ALJ identified legally sufficient reasons for rejecting Plaintiff's credibility and giving less weight to the opinion of his treating physician, the administrative decision is **AFFIRMED**.

## BACKGROUND

　　　　Plaintiff's application for benefits was denied at the initial level and upon reconsideration by the Social Security Administration.  (Doc. 8-3 at 14; Doc. 8-5 at 9-19)  Plaintiff requested a hearing, and testified before an ALJ on October 21, 2013.  (Doc. 8-3 at 14, 35)  The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on November 13, 2013.  (*Id.* at 14-26) The Appeals Council denied Plaintiff's request for review.  (*Id.* at 2-4)  Therefore,

the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Relevant Medical Evidence**

Plaintiff has a history of a seizure disorder, which began in 1976. (Doc. 8-9 at 49) Plaintiff reported that in 1990, "he experienced a seizure while driving and drove through a home, which resulted in removal of his driver's license." (*Id.*) In addition, Plaintiff "suffered a broken back" and had two rods placed in his spine. (*Id.* at 50)

Dr. Robert Reina began treating Plaintiff on August 18, 2005. (Doc. 8-9 at 16) Dr. Reina believed Plaintiff had "a rather complicated medical profile secondary to his previous lumbar spine injury/ surgery and his generalized seizure disorder." (*Id.* at 13)

Throughout 2011 and early 2012, Plaintiff reported he had "moderate" or "moderate-severe" pain in his lower back. (Doc. 8-9 at 24, 27, 29, 32, 34, 36, 38, 40, 42, 44) Plaintiff "describe[d] the pain as an ache, burning, shooting and throbbing." (*Id.* at 32; *see also id.* at 34) Plaintiff said his pain was aggravated by "bending, extension, flexion, lifting, twisting, and walking." (*See, e.g., id* at 27) At each examination, Plaintiff exhibited tenderness and moderate pain with motion in his lumbar spine. (*Id.* at 25, 28, 30, 33, 35, 37, 43) Plaintiff did not have any "motor or sensory deficits." (*Id.*)

On June 8, 2012, Plaintiff had an x-ray of his lumbar spine. Dr. Greg Schaner found Plaintiff had "some increased sclerosis anteriorly at the L4-5 disk level with osteophytosis" and "[m]ild disk space narrowing" at the L4-5 and L3-1 levels. (Doc. 8-9 at 46, 149)

Dr. Reina and Estevan Acuna, FNP, completed a questionnaire about Plaintiff's impairments on June 27, 2012. (Doc. 8-9 at 16-23) They noted Plaintiff had a history of lumbar spine trauma with

vertebral fractures," and currently suffered from "chronic lumbar spine pain [with] spondylosis and degenerative disc disease; lower extremity atrophy/weakness [and] seizure disorder." (*Id.* at 16) According to Dr. Reina and Mr. Acuna, Plaintiff had a limited range of motion in his lumbar spine, "marked atrophy of bilateral lower extremity muscles," a "very stiff gait," and "occasional confusion." (*Id.* at 16-17) They reported Plaintiff's prognosis was guarded, and his diagnoses were based upon "xrays; general labs; seizure meds [and] therapeutic levels." (*Id.*) Dr. Reina opined Plaintiff was able to sit "0-1" hour in an eight-hour day, and stand/walk for "0-1" hour. (*Id.* at 18) In addition, he indicated Plaintiff needed to get up and move around "every ½ hour." (*Id.*) Dr. Reina and Mr. Acuna opined Plaintiff was able to occasionally lift and carry up to twenty pounds, but never lift and carry more than twenty pounds. (*Id.* at 19) They indicated Plaintiff had minimal limitations with grasping, trying, and twisting objects; and moderate limitations with using his arms for reaching overhead. (*Id.* at 19-20) Further, they believed Plaintiff's condition interfered with his ability to keep his neck in a constant position, but he was able to do so "on a sustained basis." (*Id.* at 20-21) Finally, Dr. Reina and Mr. Acuna believed Plaintiff was not able to handle even low levels of stress, and was likely to be absent from work more than three times a month. (*Id.* at 21-22)

On July 6, 2012, Plaintiff reported his back pain was "moderate-severe." (Doc. 8-9 at 24, 60) He said the symptoms were "aggravated by bending, extension, flexion, lifting, twisting, and walking." (*Id.*) In addition, Plaintiff said his symptoms were "relieved by pain meds/drugs, stretching and rest." (*Id.*) Mr. Acuna found that Plaintiff exhibited tenderness in the lumbar spine, and had moderate pain with motion. (*Id.* at 25, 61) Plaintiff did not have any "motor or sensory deficits." (*Id.*)

Dr. Aimee Riffel performed a comprehensive psychiatric evaluation on August 18, 2012. (Doc. 8-9 at 49) Plaintiff's chief complaints included (1) "[c]hronic health symptoms related to the medical diagnoses of: [s]eizure disorder, history of broken back secondary to motor vehicle accident, atrophy of calves subsequent to nerve damage, and chronic pain" and (2) "[a]nxiety and depressive symptoms, mild severity." (*Id.*) Plaintiff said he was not receiving mental health treatment, but experienced a "depressed mood, poor concentration, loss of interest in pleasurable activities, crying spells, poor memory, loss of stamina and fatigue, mood swings, sleep problems, loss of appetite, and mood instability." (*Id.* at 50) In addition, Plaintiff reported "difficulty dealing with social relationships and

4

interactions with the public." (*Id.* at 53)  Plaintiff said that on a scale of "1-10 with 10 being considered the worst," that his lower back pain was "a 10 with or without medications." (*Id.* at 50)  Dr. Riffel observed that Plaintiff "ambulated with a slow, but steady gait and a mild limp." (*Id.* at 51)  She found that Plaintiff was able to maintain "fair attention, concentration, and pace towards completion of interview tasks," and his "thoughts were linear and goal directed." (*Id.* at 52)  She gave Plaintiff a GAF score of 68, and opined his "likelihood of recovery [was] good." (*Id.* at 53)  Dr. Riffel concluded that Plaintiff was "capable of completing simple and repetitive tasks and would not need additional supervision in the work environment," and "would not have difficulty with complex tasks." (*Id.* at 54)

Dr. Fabria Vesali performed a comprehensive orthopedic evaluation on October 16, 2012. (Doc. 8-9 at 68)  Plaintiff reported he had "constant" low back pain, which was an "eight out of 10 in a zero to 10 pain scale" and "10 out of 10 at its worst." (*Id.*)  Plaintiff reported he last had "petit small [sic]" seizures a couple of weeks prior to the examination. (*Id.*)  Dr. Vesali observed that Plaintiff was "not able to walk on toes," but did "not use an assistive device for ambulation." (*Id.* at 69)  Dr. Vesali found Plaintiff had "tenderness with superficial palpation of entire upper, mid and lower back," and that "[r]otation of trunk exacerbates the low back pain." (*Id.* at 70)  In addition, Plaintiff had "[d]ecreased light touch and pinprick sensation in bilateral lower extremities." (*Id.*)  Dr. Vesali concluded:

> He should be able to walk and stand for four hours in an eight-hour day with breaks every one hour for rest and stretching.  He should be able to sit six hours in an eight-hour day with breaks every one hour.
>
> He does not need an assistive device for ambulation.
>
> He should be able to lift and carry 20 pounds occasionally and 10 pounds frequently.
>
> He should be able to do occasional postural activities.

(*Id.* at 71)  Finally, Dr. Vesali opined Plaintiff had a "limitation to work from unprotected heights, work around heavy machinery, and extremes of temperatures due to history of seizures." (*Id.*)

At office visits from October to December 2012, Plaintiff continued to report "moderate" to "moderate-severe" lower back pain. (Doc. 8-9 at 89-96; Doc. 8-10 at 8)  Mr. Acuna found Plaintiff did not exhibit "unusual anxiety or evidence of depression." (Doc. 8-9 at 96; Doc. 8-10 at 9)

Dr. Frye reviewed the record and completed a physical functional capacity assessment on November 8, 2012. (Doc. 8-4 at 13-15)  Dr. Frye determined Plaintiff was able to lift and carry 10

pounds frequently and 20 pounds occasionally. (*Id.* at 13-14)  In addition, Dr. Frye opined Plaintiff was able to sit about six hours in an eight-hour workday, and stand and/or walk for a total of four hours in an eight-hour day. (*Id.* at 14)  Dr. Frye believed Plaintiff was "[l]imited in [his] lower extremities," and could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. (*Id.*)  Further, Plaintiff could never climb ladders, ropes, or scaffolds. (*Id.*)  According to Dr. Frye, Plaintiff needed to "[a]void even moderate exposure" to hazards such as machinery and heights. (*Id.* at 15)[1]

On August 16, 2013, Mr. Acuna informed Plaintiff's counsel that Plaintiff had "[p]oorly controlled generalized seizure disorder since age eight" and, despite the fact that "his current medication regimen seems to be the most stable," Plaintiff had an average of "3-5 seizures a year." (Doc. 8-10 at 73)  In addition, Mr. Acuna reported Plaintiff had "[c]hronic lumbar spine pain with lower extremity nerve damage and muscular atrophy." (*Id.*)

Plaintiff was hospitalized on May 14, 2013, reporting that he had "electrical pain from back down right leg." (Doc. 8-10 at 102)  He reported he his pain level was "8/10" with spasms in his back, which was increased from his normal "6/10 pain." (*Id.*)  Plaintiff was given medication, which gave him "moderately good pain relief." (*Id.* at 104)  When Plaintiff was discharged, initially he refused to leave because he said he was "homeless and ha[d] nowhere to go." (*Id.*)  At a follow-up appointment with Mr. Acuna on May 20, Plaintiff reported his back pain had "radiated to the left foot and right foot," and walked with an unsteady gait. (*Id.* at 117-18)

On July 15, 2013, Plaintiff had an MRI on his lumbar spine. (Doc. 8-10 at 75)  Dr. Mansfield found a "[m]oderate central spinal canal stenosis at L4-5 diffuse posterior disk bulge/protrusion and in association with facet joint ligament flavum hypertrophy," as well as "diffuse posterior disk bulge." (*Id.* at 76, 124)

In August 2013, Plaintiff exhibited a "waddling" gait, and had moderate pain in his lumbar spine with motion. (Doc. 8-10 at 126-127)  Plaintiff reported he was "[f]eeling down, depressed or hopeless" and had [l]ittle interest or pleasure in doing things (more than half the days). (*Id.*)

Mr. Acuna completed an assessment of Plaintiff's lumbar spine impairment, which Dr. Reina

---

[1] Dr. Lee reviewed the record on May 3, 2013, and affirmed the opinion of Dr. Frye. (Doc. 8-4 at 31-33)

also signed, on October 3, 2013. (Doc. 8-10 at 129-135) They indicated Plaintiff had "poorly controlled generalized seizure disorder [and] chronic lumbar spine pain [with] radiculopathy and lower extremity bilateral atrophy." (*Id.* at 129) In addition, they noted Plaintiff had tenderness, sensory loss, muscle atrophy and weakness, and reflex changes in his lower extremities." (*Id.* at 129-30) Further, Plaintiff had an abnormal gait. (*Id.* at 130) Dr. Reina and Mr. Acuna again opined Plaintiff was able to sit "0-1" hour in an eight-hour day, and stand/walk for "0-1" hour. (*Id.* at 132) They opined Plaintiff exhibited depression and anxiety secondary to his chronic pain symptoms, and was incapable of handling "even 'low stress.'" (*Id.* at 133)

In a similar questionnaire related to Plaintiff's seizure impairment, Dr. Reina and Mr. Acuna noted Plaintiff's last three reported seizures occurred on October 10, 2012; January 24, 2012; and May 14, 2013. (Doc. 8-10 at 141) Plaintiff reported he had postictal manifestations for "1-3 hours" after his seizures. (*Id.* at 142) Dr. Reina and Mr. Acuna opined Plaintiff's symptoms were periodically severe enough to interfere with his attention and concentration. (*Id.* at 143) Further, the opined Plaintiff was unable to kneel, bend, or stoop on a sustained basis. (*Id.* at 144)

**B.     Administrative Hearing Testimony**

Plaintiff testified via video conference at a hearing with the ALJ on October 21, 2013. (Doc. 8-3 at 35) He stated he obtained a GED, and attended a junior college for three months. (*Id.* at 39) Plaintiff said he "had a seizure there," and then the school would not "let [him] attend any more." (*Id.*) In addition, Plaintiff reported he had participated in an apprentice program to join a carpenter's union. (*Id.*) However, he stopped the apprenticeship when he broke his back. (*Id.* at 40)

Plaintiff said he had "limited mobility" in his back, and was unable to "sit or stand for any length of time without having to lay down." (Doc. 8-3 at 40) He explained he had lower back pain "all the time," which radiated down to his legs. (*Id.* at 41, 49) Plaintiff said that "on a scale of one to ten, [with] ten being so bad you need to go the ER," his pain was "a seven every day." (*Id.* at 50) Plaintiff said he took medicine on a daily basis for the pain, and previously underwent physical therapy. (*Id.* at 41) He reported he attempted "to exercise a little bit, like stretch it," but was unable to lift anything. (*Id.* at 42)

In addition, Plaintiff testified that he suffered from a seizure disorder due to having "a calcium

deposit on [his] brain the size of a pinpoint." (Doc. 8-3 at 43)  Plaintiff explained that during a petit mal seizure he would "stand there and like zone and drool," but with a grand mal seizure he would be "laying on [his] back just shaking." (*Id.*)  He estimated that his last petit mal seizure was about two months prior to the hearing, while his last grand mal seizure was about five months before the hearing (*Id.*)  Plaintiff said he took medication every day for his seizures, and that the medication he was taking at the time "helped more than any other medication." (*Id.* at 43-44)  Also, Plaintiff reported he had a medical marijuana card and used it "[t]here or four times a week, usually at nighttime." (*Id.* at 48)

According to Plaintiff, he became depressed because it was hard "not being able to work, and not having a steady place to live." (Doc. 8-3 at 44)  Plaintiff said he did not see a doctor for his depression or take any medication for it, but "just dealt with it [him]self." (*Id.*)

Plaintiff reported that "on a good day" at home, he would "just kick back" and watch television. (Doc. 8-3 at 44)  In addition, he said would "get up and walk around the front yard a bit." (*Id.* at 45)  Plaintiff explained that on average day he would "lay down at least six times a day," for 15 minutes to an hour until his back "feels like it's not spasming." (*Id.* at 51)  He said he did not cook more than microwave meals. (*Id.* at 48)  Plaintiff said he was unable to take public transportation because he could not "walk up and down the hills" to get to the bus stop. (*Id.* at 45-46)  He estimated that he could "walk a hundred yards" on flat surfaces, and lift and carry about 10-15 pounds. (*Id.* at 46)

Vocational expert George Meyers testified after Plaintiff at the hearing. (Doc. 8-3 at 55)  The ALJ asked the VE to consider a person the same age as Plaintiff, with the same educational and work experience, who was "able to perform at the light level." (*Id.*)  The hypothetical worker was limited to frequent "[p]ushing or pulling with the upper extremity" and to "occasional ramps, stairs, balancing, stooping, crouching, kneeling, and crawling." (*Id.*)  Further, the ALJ said the worker must avoid ladders, ropes, or scaffolds; and "should avoid moderate exposure to hazardous machinery and moderate exposure to unprotected heights." (*Id.*)  The VE opined a worker with such limitations could not perform Plaintiff's past work, but could perform other unskilled work including as a cashier, *DOT*[2]

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v.*

211.462-010; housekeeper, *DOT* 323.687-014; and ticket seller, *DOT* 211.467-030.  (*Id.*)

Next, the ALJ asked the VE to add "a sit/stand option" that allowed the worker "to sit or stand alternatively at will provided the person is not off task more than 10 percent of the period." (Doc. 8-3 at 55-56)  The VE opined the worker would not be able to perform work as a housekeeper, and the number of cashier positions "would be eroded by 80 percent" while the ticket seller positions "would be eroded by 20 percent." (*Id.* at 56)  The VE explained other jobs would be available to the worker as well, including assembler of small products, *DOT* 706.684-22; counter clerk, *DOT* 249.366-010; and inspector/hand picker, *DOT* 599.687-074. (*Id.*)

### C.  The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the application date of March 27, 2012.  (Doc. 8-3 at 16)  Second, the ALJ found Plaintiff "has the following severe impairments: degenerative disc disease with radiculopathy and calf atrophy status post surgery, and seizure disorder." (*Id.*)  These impairments did not meet or medically equal a listed impairment.  (*Id.* at 19)  Next, the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 616.967(b), but needs to be allowed to sit or stand alternatively at will, provided that []he is not off-task more than 10% of the work period. He is limited to no more than frequent pushing and pulling with the bilateral upper extremities. He can never climb ladders, ropes, or scaffolds. He can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. In addition, he must avoid even moderate exposure to hazardous machinery and unprotected heights.

(*Id.* at 19)  With this residual functional capacity, the ALJ found Plaintiff was able to perform "jobs that exist in significant numbers in the National Economy." (*Id.* at 24)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 25-26)

## DISCUSSION AND ANALYSIS

Plaintiff argues "[t]he ALJ failed to properly weigh the medical evidence" by giving little weight to the opinion of Plaintiff's treating physician, Dr. Reina, and "by placing the greatest weight on the opinions from the examining and non-examining state agency medical consultants." (Doc. 11 at 17, 19) (emphasis omitted).  In addition, Plaintiff asserts the ALJ failed to properly evaluate his

---

*Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

credibility. (*Id.* at 21-24) On the other hand, Defendant argues the analysis was proper and is supported by substantial evidence in the record. (Doc. 12 at 13-18)

## A. The ALJ's Credibility Determination

When evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Next, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility. *Id.* at 1036. In this case, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 8-3 at 16.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible." (*Id.*)

The ALJ must base the adverse credibility determination on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Factors the ALJ may consider include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). To support a credibility determination, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Here, the ALJ considered the treatment Plaintiff received, the objective medical evidence, Plaintiff's work history, Plaintiff's activities of daily living, and the ALJ's observations of Plaintiff during the hearing. The Ninth Circuit has determined these are relevant factors in assessing the credibility of a claimant. *See, e.g., Fair*, 885 F.2d at 603; *Thomas*, 278 F.3d at 958-59. However,

Plaintiff argues the ALJ's credibility analysis was "flawed," and that the ALJ failed to properly evaluate his subjective complaints. (Doc. 11 at 21-24)

1. Treatment received

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). Further, the treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding an "ALJ is permitted to consider lack of treatment in his credibility determination).

Here, the ALJ observed that Plaintiff's "seizure medications have been effective in relieving his symptoms" and the treatment for Plaintiff's "chronic back pain has been generally conservative and routine, which indicates that the condition is not debilitating." (Doc. 8-3 at 21) In addition, the ALJ noted that Plaintiff's "medications have been effective in reducing his physical symptoms." (*Id.*, citing Exhibits B3F, B9F/12, B15F/11, and hearing testimony)

Plaintiff contends that the ALJ should not have considered the treatment received because "[t]here is no evidence that a more aggressive course of treatment would be warranted based on [his] medical conditions." (Doc. 11 at 18, citing *Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010) Plaintiff observes, the Ninth Circuit determined that "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt*, 382 Fed. Appx at 664. Significantly, however, the medical records here indicate on several occasions that Plaintiff reported his pain was "relieved by pain meds/drugs, stretching and rest," and his treating physician opined that Plaintiff was "doing well on current meds." (*See, e.g.,* Doc. 8-9 at 34, 36, 44, 95) Further, when Mr. Acuna suggested scheduling a consultation with a spinal surgeon, Plaintiff declined, stating he "would like to avoid surgery as long as possible." (Doc. 8-10 at 127)

Given Plaintiff's election to eschew more aggressive treatment, as well the physician's notes indicating that he responded well to the conservative treatment provided via medication, the treatment Plaintiff received was a relevant factor as part of the credibility determination. *See Lapeirre-Gutt*, 382

11

Fed. Appx at 664; *Meanel*, 172 F.3d at 1114; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (if an impairment "can be controlled effectively with medication," it cannot be considered disabling); *Parra v. Astrue,* 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

### 2. Inconsistencies with the medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible").

Here, the ALJ found the medical record conflicted with Plaintiff's testimony concerning the limitations caused by his back pain and his alleged mental impairments. (Doc. 8-3 at 17, 20-21) Specifically, the ALJ noted Plaintiff "complain[ed] of depression and . . . difficulty completing tasks." (Doc. 8-3 at 17) However, the ALJ also noted that Dr. Riffel determined Plaintiff's "attention,

concentration, pace, and memory were…adequate" at the consultative examination on August 18, 2012, and his "memory was . . . noted to be intact at a physical examination held on November 12, 2012. (*Id.*) Further, as discussed above, the ALJ observed that Plaintiff received only conservative treatment for his back pain, and the treatment notes indicate Plaintiff responded well to the medication. (*See* Doc. 8-3 at 21; Doc. 8-9 at 34, 36, 44, 95) Finally, though Plaintiff testified he had difficulty walking more than a hundred yards and could not walk on hills, the ALJ noted that "the motor strength of his bilateral lower extremities were essentially normal" and there was "no objective evidence that he requires any assistive device for ambulation." (Doc. 8-3 at 21) These are valid considerations for an ALJ when considering the medical record as part of a credibility determination. *See Burch*, 400 F.3d at 681; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the ALJ properly considered the fact the medical records indicated the claimant "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")

Accordingly, the ALJ properly identified medical evidence—including observations of a physician—that undermined the credibility of Plaintiff's complaints. Thus, the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Dodrill*, 12 F.3d at 918.

### 3. Plaintiff's work history

In this case, the ALJ observed Plaintiff "has experienced seizures since 1976 and his back injury took place in 1990, but he was able to work with these impairments for many years between 1983 and 2002." (Doc. 8-3 at 21) Further, the ALJ noted Plaintiff "worked only sporadically … which raises a question as to whether the claimant's continuing unemployment is actually due medical impairments." (*Id.*) On the other hand, Plaintiff argues, "The fact that Plaintiff was only able to work sporadically for many years prior to filing his application actually supports his allegations of long-term physical impairments. Despite these, [he] has persisted at trying to remain in the workforce." (Doc. 11 at 22)

Importantly, the Ninth Circuit has determined that a claimant's poor work history is a relevant factor in a credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). For example, in *Thomas*, the ALJ found the claimant "has shown little propensity to work in her lifetime"

13

given her "extremely poor work history." *Id.*, 278 F.3d at 959.  The Court observed the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability in June of 1993." *Id.*  Accordingly, the Court found her poor history was a "specific, clear and convincing reason[]" for discounting her pain testimony.  *Id.*

Although a poor employment history may support a determination that Plaintiff suffered from his impairments prior to the alleged onset date, the Ninth Circuit has determined that "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Consequently, the ALJ's consideration of Plaintiff's employment history was proper, and supports the adverse credibility determination.

4.   The ALJ's observations during the hearing

The ALJ observed that Plaintiff "showed no persuasive evidence of debilitating pain or discomfort while testifying at the video hearing." (Doc. 8-3 at 21)  The ALJ acknowledged the hearing was not long, and could not "be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis." (*Id.*)  Therefore, the ALJ gave "slight weight" to Plaintiff's "apparently lack of discomfort doing the video hearing." (*Id.*)

The Ninth Circuit has determined that when an ALJ includes personal observations of a claimant during the hearing, the decision is not improper if other evidence supports the determination. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony).  Because the ALJ set forth other clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility, the ALJ properly incorporated his personal observations into the adverse credibility determination.

5.   Plaintiff's daily activities

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding

find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Similarly, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

In this case, the ALJ considered Plaintiff's activities and noted he "described daily activities that are highly limited," including watching television, doing some yard work, and household chores. (Doc. 8-3 at 21) Accordingly, the ALJ did not find Plaintiff's activities supported an adverse credibility determination, but rather found they were "outweighed by the other factors." (*Id.*) Thus, the ALJ did not err when considering the level of activity alleged by Plaintiff. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

For the reasons set forth above, the ALJ properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

**B.     Evaluation of the Medical Evidence**

Courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court

when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The ALJ may reject the opinion of a physician by setting forth "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Because opinion of Dr. Reina conflicted with the opinions of Drs. Vesali, Frye, and Lee, the ALJ was required to set forth specific and legitimate reasons for rejecting Dr. Reina's opinion.

The ALJ observed: "Dr. Reina, who has treated the claimant since May 2005, stated on June 27, 2012, August 16, 2031 and October 3, 2013 that the claimant was limited to less than sedentary exertion, could not maintain a regular work schedule, and was incapable of sustaining gainful employment due to back disorder and 'poorly controlled seizure disorder.' Mr. Estevan Acuna, a Nurse Practitioner, concurred with Dr. Reina's opinion." (Doc. 8-3 at 23) The ALJ gave "little weight" to these opinions, explaining they were inconsistent with the medical record and the treatment prescribed to Plaintiff. (*Id.*)

The Ninth Circuit explained the ALJ may reject the opinion of a treating physician where it is "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010). Similarly, the ALJ may reject an opinion where the ALJ finds incongruity between a treating doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti*, 533 F.3d at 1041; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining inconsistencies with a physician's reports supports the decision to discount the opinion of a physician); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding an ALJ permissibly rejected an opinion where the treating physician offered contradictory observations).

Importantly, however, when an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are

not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ observed that Dr. Reina and Mr. Acuna indicated in the questionnaire that Plaintiff had a "poorly controlled seizure disorder." (Doc. 8-3 at 23) However, the ALJ also noted that "the doctor's own treatment notes… documents only infrequent seizure episodes and reported that the claimant's medications were effective in reducing his symptoms." (*Id.*) Specifically, the treatment notes indicated that Plaintiff reported his pain was "relieved by pain meds/drugs, stretching and rest," and his treating physician opined that Plaintiff was "doing well on current meds." (*See, e.g.,* Doc. 8-9 at 34, 36, 44, 95) Further, the ALJ observed that, despite the "extreme limitations concerning the claimant's ability to stand and walk" that were assessed by Dr. Reina, he did not prescribe an assistive device for ambulation. (Doc. 8-3 at 23) The ALJ also noted that Plaintiff exhibited "relatively normal physical functioning" at the consultative examination with Dr. Vesali, who found Plaintiff had decreased pinprick sensation in his legs, but was "able to walk and stand for four hours in an eight-hour day," and "sit six hours in an eight-hour day with breaks every one hour." (*See* Doc. 8-9 at 70-71)

The ALJ also rejected the limitations imposed by Dr. Reina and Mr. Acuna related to Plaintiff's mental abilities. As noted by the ALJ, Dr. Reina and Mr. Acuna opined that Plaintiff "was incapable of even 'low stress' work" due to depression and anxiety. (Doc. 8-3 at 18; *see also* Doc. 8-10 at 133) However, Dr. Riffel conducted a mental examination and found Plaintiff "had no significant mental limitations." (Doc. 8-3 at 18) Also, the ALJ observed that Plaintiff was not prescribed any psychiatric medications, and there was no "evidence of specialized mental health treatment in the record." (*Id.*)

Therefore, the ALJ carried his burden to identify conflicting evidence in the medical record, as well as conflicts with Dr. Reina's own treatment notes. Because Dr. Reina's opinions were inconsistent with the treatment notes, the medical record, and the conservative treatment given to Plaintiff, the ALJ set forth legally sufficient reasons for giving less weight to the opinions. *See Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 603.

**C. Substantial Evidence in the Record**

Significantly, the ALJ's decision to give less weight to the opinions of Dr. Reina is supported

by substantial evidence in the record. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion *need not* prove by a preponderance that the opinion is wrong." 1996 SSR 4 LEXIS 9 at *8. Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Although Plaintiff asserts that the Court cannot consider the opinion of Dr. Vesali to be substantial evidence in support of the ALJ's decision, Plaintiff ignores that the opinion was based upon an independent clinical examination of Plaintiff. Consequently, Dr. Vesali's opinion is substantial evidence in support of the ALJ's determination. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence in support of an ALJ's ultimate decision); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining an examining physician's opinion is substantial evidence if "it rests on his own independent examination").

Moreover, Drs. Frye and Lee reviewed the medical record and determined Plaintiff was able to perform light work with postural and environmental limitations for his back pain and seizure disorder. (*See* Doc. 8-4 at 13-15, 31-33) Because the assessments of Drs. Frye and Lee were consistent with the opinion of Dr. Vesali, they are also substantial evidence in support of the record. *See Tonapetyan*, 242 F.3d at 1149 (opinions of non-examining physicians may be substantial evidence when "consistent with other independent evidence in the record.").

## VI.     Conclusion and Order

For the reasons set for above, the Court finds the ALJ identified clear and convincing reasons to find Plaintiff's subjective complaints lacked credibility that were "sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. In addition, the ALJ identified legally sufficient reasons for giving little weight to the opinion of Plaintiff's treating physician. *See Tommasetti*, 533 F.3d at 1041; *Bayliss*, 427 F.3d at 1216. Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and the residual functional capacity is supported by substantial evidence. *Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Robert Lloyd Shaffer.

IT IS SO ORDERED.

Dated: **August 11, 2015**                    **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE